NOTE:

As I have previously stated, I am not an attorney, nor do I possess any formal knowledge of law. Although every effort has been made to present a professional legal response, the allotted time and limited resources available would not allow it. I have attempted to cite relevant case law — in the proper format — where appropriate; but in many instances I could not locate or cite the necessary cases. Hence, please do not assume that any of the uncited arguments are the result of negligence on my part, but accept them as rational arguments and apply relevant case law.

Please use this 'response' in conjunction with the appellate brief I previously sent as these two documents constitute the whole of my official response; combined, they supersede any other letters or documents previously sent. Ergo, the two earlier partial responses (a two-page letter, and a nine-page letter) are now irrelevant and should be ignored. I realize that an ad hoc appellate brief is not typically included as part of a legal response, but since it is relevant and professionally prepared, I believe it is appropriate here.

Acknowledging my inexperience in applied law and my limited resources, I pray this court will afford me some degree of leniency and not hold me up to the same standards of actual attorneys.

According to the State's motion to dismiss, some interesting conditions should be met for this court to grant habeas relief; to wit, "the state court decision must be objectively unreasonable and not merely incorrect . . . a decision is 'unreasonable' if the state court identified the correct legal principle, but unreasonably applied the facts of a particular case." Rather than belabor or insult this honorable court by arguing semantics, this ad rem response will focus directly on pivotal issues in plain English.

I was charged, by criminal information, with one count of second-degree child molestation. Subsequently, I was tried in Kent County Superior Court (Justice Stephen Nugent presiding). After an extremely brief trial (roughly two hours), the jury deliberated for three days (excluding scheduled breaks) before rendering a verdict of guilty. This verdict is a direct result of the trial court's grievous errors — errors that denied me my right to a fair and impartial trial by a jury of my peers.

Among the many errors, the most devastating were: the inclusion of irrelevant 404(b) evidence in the guise of witness testimony; and the exclusion of an appropriate lesser charge in the jury instructions. Independently, each of these errors promotes injustice: one through the generation of gross prejudice, the other through the vitiation of the jury's ability to reach a fair and accurate verdict. The cumulative damage of these errors is exponential to the extent that it was impossible to receive a fair and untainted trial. In other words, these errors are so arbitrary and capricious they constitute a due process violation of a constitutional magnitude and warrant federal court review. See LEWIS V. JEFFERS, 497 U.S. at 780

404(b) EVIDENCE

During a pre-trial motion, Associate Justice Stephen P. Nugent ruled on the admissibility of the 404(b) testimony. During this ruling he cited a very specific exception standard under Rule 404(b), viz.: "... the Court has stated the specific exception that is 'common plan or scheme' and also the Court stated in HOPKINS, it goes to the Modus Operandi of this defendant. (T p. 46-48 6/14/04).

During trial, the Court provided limiting instructions to the jury regarding the use an application of the 404(b) testimony: "... it has been admitted for your consideration for the limited purpose of deciding whether the facts and circumstances of this other alleged misconduct and the offense with which the defendant is charged in this case are so similar that it is 'likely' that the same person committed 'both' the other alleged crimes and the offense charged in this case." (TT p. 84 16-21) And, "You may use it only for the limited purpose of determining whether this defendant had a so-called 'common scheme or plan or Modus Operandi,' for committing the offense with which he is charged." (TT p. 85 2-4) The Court repeated these cautionary instructions two other times. (TT p. 115 6-12; p. 156 20-25; p. 115 20-23; p. 157 5-9) Immediately following each instance of the above instructions, the Court informed the jury of the only condition ["common scheme or plan"] under which they can consider the 404(b) testimony, "You may not consider this evidence for any other purpose." (TT p. 84 22-23; p. 115 14-15; p. 157 1-2) In other words, the jury was specifically instructed to consider the 404(b) testimony to demonstrate a "common scheme or plan," to the exclusion of any other purpose.

The trial Court erred in its pivotal ruling which allowed extrinsic 404(b) testimony into my trial. The Court did not thoroughly recognize the serious and undue risk that the probative value of other alleged "prior bad acts" is — in this case — substantially out-weighed by the danger of unfair prejudice, the inherent potential to mislead the jury, and the needless presentation of cumulative evidence. (PUB. L. 93-595 § 1, JAN. 2 1975 88 STAT. 1932). The trial Court took the "common plan, scheme, design, or modus operandi" exception to R.I.R. Evid. 404(b) so far beyond its outer limits — in order to allow evidence of remote, uncharged alleged bad acts that were clearly dissimilar in nature, context, and circumstance to the offense for which I stood trial — that it transformed the narrow doorway for admissible character evidence in to an infinitely wide cavern that would swallow the rule if upheld. Indeed, the uncharged acts were so dissimilar that they could only have served in this trial to sway the jury into believing that I had a propensity to commit sexual assaults, precisely the result that Rule 404(b) forbids.

I submit that, in this case, the trial Court definitely abused its descretion and, as a result, denied me a fair trial by an unbiased jury. Although the prosecution maintained — in support of its motion — that the circumstances of the prior alleged incidents were sufficiently similar to the current (LAPPIN) case to demonstrate a plan or scheme, in truth, the details of the prior alleged acts were markedly different. To avoid belaboring this Court I will refrain from recounting many of the numerous disparities since they were adequately revealed in my appellate brief, which I previously filed with this court, to complement this response.

In this case, there was no 404(b) evidence so common regarding the time, location, or conduct that would indicate a unique 'signiture' in relation to the current alleged events. This is precisely the type of case that the

law was designed to protect defendants from, and what many — in and out of the court system — rightly see as a justified bias once the material is presented before the jury. Hence, the trial Court should have excluded such evidence. Indubitably, 404(b) evidence was designed to be an exception to the standard rules that govern evidence, and that its aim is to identify "signiture" offenses, viz. that the offenses are so similar that it is highly unlikely that anyone else could have committed them. Along with the significant time differential between the previous and current alleged acts, differences also existed as to: the location (CITY) of the alleged incidents; the relationship between the witnesses, the accuser, and myself; the ages of the witnesses and the accuser (7-15); the environment (SETTING) of the alleged incidents; the circumstances leading up to the alleged incidents; as well as the actual nature of the alleged conduct. The only apparent — yet inconsequential — similarity was the gender of the two 404(b) witnesses and the current accuser. The details of these alleged incidents in no way met the foundational requirements of the Rule 404(b) exception, because there were no legally significant similarities between the charged and uncharged alleged acts to warrant admission of the 404(b) evidence.

Almost fifty years ago, an article in the Iowa Law Review began with the following memorable words: "Strongly entrenched among many American traditions is the concept that man should not be judged strenuously by reference to the awesome spectre of his past life. When one faces trial for a specific crime, he should not be held to answer for the scandal that his earlier vices would most certainly produce. Evidence of other crimes and misdeeds is not excluded because of an inherent lack of probative value, but is withheld as a precaution against inciting prejudice. Adherents to the common law have for centuries boasted of

a certain Anglo-American solicitude for the prisoner, contrasting their accusatorial methods with the inquisitorial devices of continental jurists." M.C. Slough & J. William Knightly, Other Vices, Other Crimes, 41 Iowa L. Rev. 325, 325 (1956).

It is that venerable concept of the law's "solicitude" for the accused, to which the above-quoted passage from a law review article makes reference, that lies at the root of Rule 404(b) of our Rules of Evidence (and analogous rules in so many other jurisdictions). The purpose of these rules (derived from the common law rules of evidence) is to exclude evidence of a defendant's alleged propensity to commit crime; our system seeks to focus the attention of the finders of fact on the evidence pertinent to the particular crime of which I am presently charged. In PEOPLE V. LEHMAN, 125 NE. 2d 506 (ILL. 1955), the Supreme Court of Illinois explained with laudable terseness why propensity evidence is so potentially dangerous: "Evidence of other crimes is objectionable 'not because it has no appreciable probative value, but because it has too much.' The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime." Id. at 509 (quoting 1 John H. Wigmore, Evidence § 194 (3d ed 1940)). Similarly, the Supreme Court of New Hampshire has tellingly pointed to the immensely prejudicial effect of propensity evidence: "Prejudice results when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense. The infusion of such evidence into a trial is 'probably only equalled by a confession in its prejudicial impact upon a jury.'" STATE V. WOODBURY, 469 A.2d 1302, 1305 (N.H. 1983) (quoting COMMONWEALTH V. SPRUILL, 391 A. 2d 1048, 1049-50 (PA. 1978)).

Rule 404(b) essentially codifies the long-standing rule that evidence of a criminal defendant's propensity to commit crime is inadmissible in the prosecution of a particular criminal case. See, e.g., STATE V. STEWART, 663 A. 2d 912, 923 (R.I. 1995) "Evidence of prior crimes is not admissible to prove the propensity of a

defendant to commit such a crime." STATE v. BRIGHAM, 638 A.2d 1043, 1044 (R.I. 1994) "As a general rule, in the prosecution of a specific crime, evidence of past, unconnected, uncharged criminal behavior is not admissible to prove a defendant's propensity to commit the crime charged. The basis for excluding such evidence of 'other crimes' is the belief that 'the potential for creating prejudice in the minds of the jurors outweighs its probative value.'" (quoting STATE v. BROWN, 626 A.2d 228, 233 (R.I. 1993); see also UNITED STATES v. McCOURT, 925 F.2d 1229, 1235-36 (9TH CIR. 1991) (discussing the federal analogue of our Rule 404(b) and stating that this rule of evidence "reflects a deep seated notion that our system of justice should not permit the trier of fact to infer that because someone was a bad guy once, he is likely to be a bad guy again.") STATE v. QUATTROCCHI, 681 A.2d 879, 885-86 (R.I. 1996); STATE v. LEMON, 497 A.2d 713, 721 (R.I. 1985); STATE v. TREMPE, 663 A.2d 620 (N.H. 1995); STATE v. WINTER, 648 A.2d 624 (VT. 1994); STATE v. JALETTE, 119, 614, 382 A.2d 526 (R.I. 1978)

The R.I. Supreme Court has expressed its adherence to that fundamental principle on various occasions. In STATE v. GOMES, 690 A.2d 310, 314 (R.I. 1997), The R.I. Supreme Court also expressed in particularly emphatic language its awareness of just how prejudicial such evidence can be, stating: "Evidence of other crimes or bad acts is usually considered so prejudicial that it is per se inadmissible regardless of any relevancy that it might have to show the propensity of a defendant to have committed the charged crime." See also STATE v. STEWART, 663 A.2d 922 ("Generally, evidence that shows or tends to indicate that an accused has committed another crime independent of the crime for which he or she is standing trial is irrelevant and inadmissible."); STATE v. GALLAGHER, 654 A.2d 1206, 1210 (R.I. 1995) ("As a general rule, evidence that shows or tends to indicate that the

accused has participated in a crime for which he or she is not on trial, even if it is the same type of crime, is irrelevant and inadmissible.").

In a manner that is consistent with the previously cited decisions from other jurisdictions, The R.I. Supreme Court has explicitly cautioned about the danger that a jury might make decisions based upon a defendant's perceived propensity rather than upon the evidence relative to the crime for which he is on trial. See, e.g., GALLAGHER, 654 A.2d 1210 ("When a jury is allowed to consider independent crimes for which a defendant is not on trial, a real possibility exists that such indication of bad character or bad acts would create prejudice in the minds of the jurors and improperly influence their decision in regard to the crimes charged. The danger is that jurors may believe that the prior crimes or bad acts denote a propensity in a defendant to commit the crime with which he or she is charged. In these circumstances the potential for prejudice outweighs the probative value of such evidence, and it is therefore inadmissible."); see also STATE V. PRATT, 641 A.2d 732, 742 (R.I. 1994).

In GALLAGHER, 654 A.2d 1211, The R.I. Supreme Court characterized the evidence of unrelated, prior crimes as being "irrelevant and inherently prejudicial." The "inherently prejudicial" nature of such evidence should, in my judgment, lead to a rule that, where there is some meaningful doubt as to its admissibility, evidence of this sort should be excluded. In my view, the "close calls" should be resolved in favor of the party seeking to exclude evidence of prior crime or wrongdoing. See STATE V. SMITH, 725 P.2d 951, 953 (WASH. 1986)

It should also be borne in mind that Rule 404(b) is a rule of exclusion. The R.I. Supreme Court has frequently referred to Rule 404(b) of the R.I. Rules

of Evidence as being a rule of exclusion. See e.g., STATE V. GARCIA, 743 A.2d 1038, 1050 (R.I. 2000) (referring to "the general exclusionary rule of Rule 404(b)"); see STATE V. GALLAGHER, 654 A.2d 1206, 1210 (R.I. 1995) (discussing the exceptions "to this exclusionary rule"); see also STATE V. CHARTIER, 619 A.2d 1119, 1123 (R.I. 1993); STATE V. LEMON, 497 A.2d 713, 721 (R.I. 1985); STATE V. JALETTE, 119 R.I. 614, 623-26, 382 A.2d 526, 531-33 (1978); see generally SPENCER V. TEXAS, 385 U.S. 554, 560 (1967) (stating that evidence of prior offenses is "generally recognized to have potentiality for prejudice" and noting that it is usually excluded except where a specific recognized exception applies).

The 404(b) rule is clear that otherwise relevant evidence is to be excluded (i.e., not admitted) unless certain specified exceptional conditions are fulfilled. In other words, unless a specific exception to Rule 404(b) is properly invoked, evidence of prior wrongs with its implications of propensity (which can be so powerful) should be quite simply off-limits. See STATE V. QUATTROCCHI, 681 A.2d 886 (noting the R.I. Supreme Court's expressed reservations about extending the other crimes (or bad-acts) exception and commenting on that exception's "overwhelming prejudice to the defendant and its tendency to be viewed by the trier of fact as evidence that the defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged.")

Bearing in mind the just-summarized principles, it is my view that the testimony of the 404(b) witnesses about my alleged previous misconduct served no legitimate purpose in the prosecution of this case other than "to demonstrate the accused's [my] propensity to commit the crime charged." STATE V. JALETTE, 119 R.I. 625, 382 A.2d 532. The evidence of my alleged criminal conduct, in relation to the 404(b) witnesses, was evidence of my possible propensity; and I do not believe that it fell within any recognized

exception to Rule 404(b)'s fundamental exclusionary provision. As such, the 404(b) testimony should have been deemed inadmissible.

In my view, the alleged incidents (current and prior) were too fundamentally dissimilar even to merit consideration under any arguably pertinent exception to Rule 404(b). Moreover, even if that obstacle were surmounted, no recognized exception to Rule 404(b) would properly apply. I shall explain this latter sections of this response.

I fail to see a sufficient similarity (as that term is employed in Rule 404(b) jurisprudence) between the alleged previous incidents and the offense with which I was charged. To my mind, this is a consideration of capital importance. In United States v. Cortijo-Diaz, 875 F.2d 13, 15 (1st Cir. 1989), the First Circuit emphasized the core values that are protected by Rule 404(b):

"Although it seems unnecessary to restate the rule's plain language, experience shows that we cannot over-emphasize the central principle for which this rule stands, which is a negative one: evidence of other acts is not admissible to prove propensity to engage in criminal activity. This rule is, of course, simply a legislative enactment of long-established notions of fair play and due process, which forbid judging a person on the basis of innuendos arising from conduct which is irrelevant to the charges for which [he] is presently standing trial, i.e., against finding present guilt based on a 'bad character profile.' The general rule is thus against admissibility of 'other act' evidence."

It is important to remember that a precondition for evidence ever being considered for admissibility under any exception to Rule 404(b) — as in this case — is that there be similarity between the prior alleged incidents and the factual context of the current alleged offense. There are situations under Rule 404(b) in which similarity between two events would not be required