for an exception to the Rule properly to be invoked. See, e.g., STATE V. STEWART, 663 A.2d 912, 923 (R.I. 1995). But the case at bar is not of that type: the prosecution sought to admit the 404(b) testimony precisely because of its perceived similarity to the current alleged event. Absent meaningful similarity, the evidence of any other alleged offense is irrelevant. See, e.g., UNITED STATES V. RUBIO, 834 F.2d 442, 451 (5th CIR. 1987) ("Relevance is a function of the similarity of the extrinsic offense to the offense charged."); STATE V. DEVINCENTIS, 74 P.3d 119, 125 (WASH. 2003) ("Admission of evidence of a common scheme or plan requires substantial similarity between the prior bad acts and the charged crime."); see also UNITED STATES V. THOMAS, 964 F.2d 836, 839 (8th CIR. 1992) (stating that, for evidence of another offense possibly to be admissible under an exception to Rule 404(b), it must first "be similar in kind to the crime charged.").

Unless there is a real similarity between the acts, the process of analyzing whether there might be an applicable exception to the exclusionary effect of Rule 404(b) should stop immediately. See UNITED STATES V. FRANKHAUSER, 80 F.3d 641, 648 (1ST CIR. 1996); UNITED STATES V. HUFF, 959 F.2d 731, 736 (8th CIR. 1992); UNITED STATES V. FIELDS, 871 F.2d 188, 197 (1ST CIR. 1989). I do not deny the existence of some (ONE) similarity (GENDER) between the allegations stemming from the alleged incidents, but the law requires more than some similarities. See STATE V. HANSEN, 608 P.2d 1083, 1085-86 (MONT. 1980) (discussing what is required in terms of similarities between the incidents being compared.)

The dissimilarity in age between my accuser and (404(b)) witness, Jahmal Abercrombie is striking. The dissimilarity does not stem ~~soley~~ solely from the raw numerical difference in age between the above to individuals,

but rather from the fact that, at the pertinent time, Mr. Abercrombie was a young man, while, in contrast, the accuser in this case was a child. Furthermore, at the time the previous incident with Mr. Abercrombie allegedly occurred, the accuser in this case did not yet exist. Venerable traditions in our law treat sexual batteries upon children with special seriousness and for good reason. There is, however, far too little similarity between the alleged conduct with the current accuser, (Mr. Lappin) and the alleged conduct with the 404(b) witnesses. In my view, the notion that I was allegedly involved in touching an adolescent male should not have been admitted as evidence to prove that I committed the current offense.

Even if there were sufficient similarity between the previous alleged incidents and what was alleged to have happened in this case to merit a consideration of Rule 404(b) exceptions (and I emphatically repeat that I fail to see such similarity), I do not believe that the evidence as to the previous alleged incidents would be admissible pursuant to the "common plan" exception to Rule 404(b)'s exclusionary bar. It appears to me that the burden of establishing the applicability of a particular exception to Rule 404(b)'s general prohibitory language should quite clearly be on the prosecution. My view in that regard is based upon the fact that the plain language of Rule 404(b) excludes prior wrong evidence unless a particular exception is properly invoked. I infer from the exclusionary wording of Rule 404(b) that the proponent bears the burden of establishing that a particular exception applies.

While I am not aware of any reported Rhode Island case that specifically so states, the following statement by the Supreme Court of Vermont in STATE v. WINTER, 648 A.2d 624 (Vt. 1994), sets forth the

principle which I believe to be correct:

"We must also emphasize that the grounds for admission specified in Rule 404(b) are not magic words, the utterance of which automatically admits all misconduct evidence. The State has the burden to show precisely how the proffered evidence is relevant to the theory advanced, how the issue to which it is addressed is related to the disputed elements in the case, and how the probative value of the evidence is not substantially outweighed by its prejudicial effect." Winter, 648 A.2d 627.

The Supreme Court of New Hampshire spoke similarly in State v. Kirsch, 662 A.2d 937 (N.H. 1995):

"The burden is on the State to articulate to the trial judge the precise evidentiary purpose for which it seeks to introduce the other crimes evidence and the purported connection between the evidence and the stated purpose." Id 942; see also United States v. Hogue, 827 F.2d 660, 662 (10th Cir. 1987)

I agree that a "common design or plan" is a concept that is broader than a single plot, or series of events. See, e.g., People v. Ewoldt, 867 P.2d 757, 769 (Cal. 1994). While I of course acknowledge that there are situations where the common plan exception may properly be invoked "[a] greater ~~greater~~ degree of similarity is required in order to prove the existence of a common design or plan." Id. 770 See, e.g., United States v. Huff, 959 F.2d 731, 736-37 (8th Cir. 1992); United States v. Norton, 846 F.2d 521, 524 (8th Cir. 1988); State v. Lough, 889 P.2d 487, 490 (Wash. 1995). The exception requires far more similarity between the incidents and far more indicia of a systematic plan than are present here. See, e.g., State v. Lough, 889 P.2d 487, 490 (Wash. 1995). Therefore, I would hold that, to be admissible pursuant to the "common plan" exception, the prosecution needed to demonstrate that the 404(b)

testimony was relevant to prove that I had a systematic scheme to take criminal sexual advantage of male youths.

I fail to see how the evidence concerning my alleged previous wrongdoing establishes that there was a sytematic plan of which the charged crime was a part. I simply do not believe that the 404(b) witness testimony is relevant to proving that I had a systematic scheme to take criminal sexual advantage of male youths.

The 404(b) evidence may have helped to persuade the jury of my alleged propensity to engage in other alleged criminal misconduct, but that is precisely what the law does not tolerate. As one court has stated:

> "We perceive the true test for the admissibility of evidence of other offenses is whether it is relevant and necessary to prove an essential ingredient of the crime charged. Nevertheless, when the relevancy is reached merely by demonstrating the accused's bad character through his propensity to commit similar crimes, evidence of the other offenses is ordinarily inadmissible. STATE v. IRVING, 601 P. 2d 954, 956-57 (WASH. CT. APP. 1979).

In my view, the admission of the 404(b) testimony was not harmless error — far from it! Even if the testimony concerning the previous alleged incidents could survive the strictures of Rule 404(b), it would still be subject to review under Rule 403. See, e.g, UNITED STATES v. TEMPLE, 862 F. 2d 821, 823 (10th CIR. 1988) ("If the trial court finds that the prior acts are admissible under Rule 404(b), it must still conduct a separate balancing of the probative value of the evidence and its prejudicial effect under Rule 403.").

In discussing the requirement that, before admitting evidence under an exception to Rule 404(b), the court must balance the probative value of the

evidence against the danger of unfair prejudice, the Supreme Court of Washington has specifically indicated how the courts in that state should deal with doubtful cases in this area of the law of evidence. That court specifically ruled that "in doubtful cases the scale [of justice] should be tipped in favor of the defendant and the exclusion of evidence." STATE v. SMITH, 725 P.2d 951, 953 (WASH. 1986) (quoting STATE v. BENNETT, 672 P.2d 776). Obviously, there is wisdom and reason in such an approach to "doubtful cases" involving Rule 404(b). With regard to the 404(b) witness, Mr. Colardo, there is clear reason to doubt his testimony, as the merits of his earlier allegations and evidence of the same incident were reviewed by Justice Clifton:

"The [Kent County Superior] COURT has carefully examined all of the affidavits, witness statements and exhibits contained in the information package and given all proper inferences to the evidence contained in the package and concludes that the State has not demonstrated probable cause to believe that the defendant has committed an assault with intent... The victim [Mr. Colardo] stated to police that the defendant never touched the victim in his private parts and there is nothing within the information which would allow the Court to logically infer penetration or intent to penetrate. The victim [Mr. Colardo] further stated that the defendant never removed any of the victim's clothing. Accordingly, the Court finds the information package does not set forth a sufficient probable cause for the Court to conclude that the defendant committed an assault... The defendant's Motion to Dismiss is granted." (Kent County Superior Court 11-14-95 (Motion to Dismiss)). Mr. Colardo reaffirmed the above as a 404(b) witness during my trial in 2004.

Viewing the issue in the light of Rule 403 standards, it would be my view that the probative value of the evidence concerning alleged previous offenses was far outweighed by its highly prejudicial nature. See UNITED STATES v. MOCCIA, 681 F.2d 61, 63 (1st CIR. 1982) ("The trial judge must weigh the special relevance against the prejudicial risk, taking into account the likely hostile jury reaction that underlies the common law rule."); see UNITED STATES v. VAROUDAKIS, 233 F.3d 113, 121-25 (1st CIR. 2000); UNITED STATES v. MYERS, 550 F.2d 1036, 1044-45 (5th CIR. 1977). The likely impact of such evidence which indicates to the jury that I might have previously committed a serious offense is very great. See PEOPLE v. WOLTE 592 N.E. 2d 1182, 1187 (ILL. CT. APP. 1992) ("Erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily, calls for reversal.").

To the extent that someone might suggest that proof of modus operandi would have been an adequate reason for admitting evidence of the alleged previous incidents, that argument must fail because in this case there was no issue as to my identity, and so there was no relevant basis for the modus operandi evidence. Modus operandi evidence is sometimes admissible when there is a question as to identity, but not otherwise. See, e.g., UNITED STATES v. WINGART, 27 M.J. 128, 135 (C.M.A. 1988) ("Evidence of an appellant's modus operandi might be admissible to help identify him as the perpetrator of a crime with which he is charged if there is some question about the identity of the person who committed the crime; and yet this evidence might be inadmissible if no issue existed as to identity but only as to whether a crime had been committed in the first place."); see UNITED STATES v. FERGUSON, 28 M.J. 104, 109 (C.M.A. 1989); VELEZ v. STATE, 762 P.2d 1297, 1301 (ALASKA CT. APP. 1988); STATE v. MOELLER, 548 N.W. 2d 465, 471-77 (S.D. 1996); STATE v. BOWEN, 738 P.2d 316, 320-21

(WASH. CT. APP. 1987) (discussing the difference between "common scheme or plan" and modus operandi"). Even if the term "modus operandi" were construed more broadly than the just-cited cases would allow, there is still insufficient evidence here of a distinctive pattern of criminal [sexual] behavior." PEOPLE V. WOLTZ, 592 N.E. 2d 1182, 1186 (ILL. APP. CT. 1992).

After reviewing my case and relevant case law, I am convinced that, because of the admission of the two 404(b) witnesses, I did not receive a fair trial from an unbiased jury; and as such, I believe my due process rights have been grossly violated. I adopt as my own — and would apply to this case — what the Supreme Court of North Dakota said in its opinion in STATE V. OSIER, 569 N.W. 2d 441, 444 (N.D. 1997):

> "There is no permissible basis under the circumstances of this case for admitting the niece's testimony under Rule 404(b). Her testimony was not relevant to a genuine issue regarding motive, scheme, plan, or any other listed exception under Rule 404(b). The sole purpose served by her testimony was to demonstrate [the defendant's] criminal sexual character to show he probably acted in conformity with that character in committing the acts charged. It is fundamentally unfair to tempt a jury to convict a defendant circumstantially on the basis of prior misconduct or character propensity rather than upon evidence of the criminal acts charged. We conclude the trial court erred in admitting the niece's testimony."

This point is also evident the R.I. State Court's cautionary and restrictive language in STATE V. QUATTROCCHI:

"We are of the opinion that PIGNOLET represented the extreme beyond which we are unwilling to extend the other-crimes (or bad-acts) exception because of its overwhelming prejudice to the defendant and its tendency

to be viewed by the trier of fact as evidence that the defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged." STATE V. QUATTROCCHI, 681 A.2d 886

Even after according due recognition to the fact that our modern jurisprudence has recognized the need for a certain liberalization of some traditional rules of evidence in trials involving allegations of sexual offenses, that liberalization must not become synonymous with standardlessness. I share the views expressed by Justice Katz of the Supreme Court of Connecticut in her dissenting opinion in the case of STATE V. KULMAC, 644 A.2d 887, 909 (Conn. 1994) (KATZ, J., dissenting):

> "Sexual assault is a terribly brutal and emotionally damaging crime, especially where the victims are minors. This does not, however, justify the adoption of special rules allowing the state to introduce any evidence of prior sexual misconduct that it can dig up against the defendant."

There comes a point where concerns of fundamental fairness and due process require that some evidence of prior alleged conduct must be excluded. See, STATE V. CORTIJO-DIAZ, 875 F.2d 15 (1st Cir. 1989)

Furthermore, the trial justice acknowledged that, "these allegations are easily made, . . . without this type of evidence the State may not be able to sustain its burden of proof beyond a reasonable doubt as to the elements of this offense (Tp47 20-23). Nevertheless, the trial justice permitted the 404(b) witnesses before hearing any direct testimony from the accuser, viz. the trial justice allowed 404(b) testimony before confirming its relevance. Moreover, the 404(b) witnesses — by any means — could not substantiate whether the current alleged offense did or did not occur;

nor could they corroborate that the current alleged offense likely occurred. The trial court should exclude such evidence if it believes it is purely cumulative and not essential to the prosecution's case. Evidence of other actual crimes (not alleged offenses) is admissible only when it tends to show one of the exceptions to which I have previously alluded and only when that exception is relevant to proving the case at bar. STATE V. CURRY, 43 OHIO ST. 2d 66, 330 N.E.2d 720 (1975). JALETTE, 119 R.I. at 627, 382 A.2d at 533. I am extremely conscious that the indiscriminate use of 'other crimes' evidence poses a substantial risk to my right to a fair trial. I agree with the holding in KELLEY with the admonition that this type of evidence should be sparingly used by the prosecution and only when reasonably necessary. WHITTY V. STATE, 34 Wis. 2d 278, 297, 149 N.W. 2d 557, 565 (1967); PEOPLE V. KELLEY, 66 CAL. 2d 232, 424 P.2d 947, 57 CAL. RPTR. 363 (1967)

In the case at bar I am constrained to conclude that the testimony of the 404(b) witnesses (Mr. Abercrombie and Mr. Calardo) did not qualify for any Rule 404(b) exception. The State's argument relating to motive, opportunity, common scheme, or plan is unpersuasive in this context. The only effective purpose of this testimony was to conjure up the illusion of propensity. It can scarcely be contended that there was any common scheme or plan relating to the accuser, and the 404(b) witnesses. These incidents occurred years apart and in entirely separate contexts.

Contrary to the Trial Court's claim of my propensity to "molest young boys", the 404(b) testimony should not have been admitted precisely for that reason (propensity), and also because neither of the 404(b) witnesses ever mentioned during their testimony that they were molested

or touched in a sexual or inappropriate manner. In fact, Mr. Colardo specifically stated that he was never touched (T.T. II p. 77-83). Neither Mr. Colardo nor Mr. Abercrombie ever mentioned or alluded to any sexual act, or any intent to perform a sexual act. The only claims of a sexual nature were provided by the prosecutor's hypothetical scenario: a scenario that was not based on actual facts and evidence of the case.

The extrinsic 404(b) testimony only hinders the jury's reasoning by suggesting that other remote incidents might have occurred. Hence, the danger of undue prejudice outweighed the probative value of the evidence in view of the availability of other means of proof under Rule 403. Allowing 404(b) testimony into my trial created prejudice and passion in the jury to a degree that no cautionary or limiting instructions could have adequately offset the danger of being denied my right to a fair trial by an impartial jury.

CONTINUED ON PAGE FIFTY-THREE (p.53)