As previously stated, before evidence — especially 404(b) evidence — can be admitted, it must adhere to the standards set forth in Rule 403, which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, ... or needless presentation of cumulative evidence." (PUB. L. 93-595, § 1, JAN. 2, 1975, 88 STAT. 1932) The evidence in my trial — specifically the 404(b) evidence — had all of these conditions; therefore it should have been excluded.

Since the risks of unfair and cumulative prejudice have already been addressed, this addendum will focus on "confusion of the issues" and "misleading the jury." In my trial, the specific purpose of the "common plan or scheme" exception was not only impossible to apply without exciting prejudice, but it was also deeply confusing. The jurors were asked to consider "whether the facts and circumstances of this other alleged misconduct and the offense with which the defendant is charged in this case are so similar that it is likely the same [bad] person committed both." (TT 84-85, 115, 156-57) If the facts and circumstances of alleged misconduct were true (which I emphatically deny) then I would undoubtedly be a "bad" person. Yet, the trial justice specifically instructed the jury that, "you may not use this [404(b)] evidence as proof that the defendant is a bad person and therefore probably committed the crime." (TT 84-85, 115, 156-57) To determine if the same "bad" person probably committed all three offenses, there should be a common "thread" that directly links them, but in my case, the facts and circumstances of the alleged misconduct were remarkably dissimilar: a posterior grab (Mr. Abercrombie, '91); no contact (Mr. Colarido, '95); and a frontal touch (Mr. Lappin, '02). These alleged acts are not so similar that it likely the same [bad] person committed them. Hence, the use of 404(b) evidence under the guise of the "common plan or scheme" exception served only to induce decisions on a purely emotional basis — exactly what Rule 403 forbids. (Slough,

Relevancy Unraveled, 5 KAN. L. REV. 1, 12-15 (1956); Trautman, Logical or Legal Relevancy — A Conflict in Theory, 5 VAN. L. REV. 385, 392 (1952); McCormick § 152, pp. 319-321.)

The 404(b) testimony as well as the limiting instructions that followed misled the jury toward a guilty verdict; this is evident via the following:

- The trial justice allowed 404(b) testimony before determining its relevancy (viz. before reviewing any current statements or testimony from the 404(b) witnesses.
- The 404(b) evidence could not substantiate whether the current alleged event actually occurred, or even likely occurred, nor could it corroborate any element of the current allegation.
- The specific purpose — "common plan or scheme" — of the 404(b) evidence was confusing and humanly impossible to apply without prejudice.
- The trial justice instructed the jury to consider the "facts" of the 404(b) evidence (they were not "facts", they were vague recollections of distant memories of alleged past events). By labeling the allegations as "facts," the trial justice validated them for the jury (the triers-of-fact).
- By employing the phrase "the defendant is a bad person" the trial justice excited prejudice; he imprinted — in the minds of the jurors — the mental image of me as a bad person, and this image could not be erased or ignored (much like the assumed guilt of anyone in handcuffs).
- During his limiting instructions, the trial justice employed ambiguous terms, viz. "likely" and "probably." These terms obviated the specific purpose of the 404(b) testimony and the limiting instructions.
- Although the trial justice instructed the jury not to utilize "bad acts" evidence to show conformity or propensity; he later (more recently) instructed them — in clearer terms — to consider whether the same person "likely" committed both. (TT 84-85, 114-15, 156-57) Since the trial justice

did not provide a legal distinction between "propensity" and "likelihood" the jury was apt to use the clearer, more recent instruction.

Though each of these biased circumstances may be rather trivial, the cumulative effect undoubtedly misled the jury, and since the limiting instructions were a major component of this consequential pettifog, there was no opportunity to remedy or counterbalance the pernicious effect. Hence, the admission of extrinsic 404(b) testimony and inadequate limiting instructions misled the jury by confusing the issues, thereby causing unfair prejudice — prejudice that Rule 403 specifically forbids.

In addition to being confusing and misleading, the limiting instructions were also highly ineffective for their intended purpose. It is my understanding that the legal function of limiting instructions is to effectively limit the cumulative effect of probative evidence, viz. to prevent prejudice, and to ensure a fair trial; this is especially true for extrinsic evidence such as remote 404(b) testimony. In my case, the trial justice expected the jury to consider only the "common plan or scheme" exception of Rule 404(b), yet he never provided a clear legal definition of the exception (e.g. a common thread or signature that demonstrates sexual intent). Without such a definition, the jurors could have easily misapplied the instruction as a common theme or occurrence without any regard to intent. More importantly, the limiting instructions never addressed the issue of intent (viz. sexual gratification), and this intent was a crucial and necessary element for the State to prove. (T.T. p. 39-40, 159-60 (COURT); p 144-45 (STATE)) Even if intent was inferred, no instruction could effectively direct a jury to extract a single element (sexual intent) of evidence and then consider that element from a single limited perspective ("common plan or scheme") while ignoring all other elements and perspectives. Such an instruction would be humanly impossible to execute.

Cases such as mine — by the very nature of the charge — arouse hostile emotions in the minds of reasonable adults. The inclusion of any evidence that negatively reflects on a defendant (with this type of charge) only adds fodder to the fervent hostility. No amount of limiting instruction — regardless of its phrasing — could have effectively cautioned the jury against the damaging repercussions of such prejudicial evidence. Moreover, including vague terms such as "likely" and "probably" in the instruction only exacerbated its ineffectiveness. Hence, the limiting instructions were grossly inadequate and did not comply with Rule 403.

I believe it is necessary to further address the alleged "facts and circumstances" that coincided with the primary allegation, because these "facts and circumstances" were deciding factors in: the court's overruling to my objection of the 404(b) evidence (TT 85-86, 114), and the Court's denial of my motion to acquit (TT 110-13, 116-21). The prosecutor relied on these alleged circumstances (ie. shoulder ride, being carried, and being placed on a bed) to support her hypothetical scenario. During the trial — and probably during previous interviews with the accuser — these allegations were speciously extracted from the accuser through the fallible use of leading and suggestive questioning* (eg "... and [he] used his hands to touch your penis, correct?" (TT 58, ET AL 53-64). This line of questioning is highly censured due to the extreme risk of eliciting false testimony (VIZ. manufactured responses).* In cases with substantial evidence, this form of questioning — although unfair — may not be detrimental. However, my trial was not such a case. In my case the State relied on these elicited allegations to support its motion to include 404(b) testimony — testimony that is controversial and prejudicial.

Even if the accuser volunteered these allegations on his own volition (that is, without undue influence), they still do not adequately demonstrate any form of a sexual act or intent of a sexual act. The accuser did not mention what might have prompted the alleged shoulder ride. Did he request it? Did I ask him? Or even more unlikely, did I supposedly

*INVESTIGATIVE INTERVIEWS OF CHILDREN: A GUIDE FOR HELPING PROFESSIONALS, by DEBRA A. POOLE; THE SUGGESTIBILITY OF CHILDREN'S RECOLLECTIONS: IMPLICATIONS FOR EYEWITNESS TESTIMONY, by JOHN DORIS; INACCURACIES IN CHILDREN'S TESTIMONY: MEMORY, SUGGESTIBILITY OR OBEDIENCE TO AUTHORITY, by JON'A MEYER; HANDBOOK ON QUESTIONING CHILDREN: A LINGUISTIC PERSPECTIVE, by ANNE GRAFFAM WALKER, Ph.D; JEOPARDY IN THE COURTROOM: A SCIENTIFIC ANALYSIS OF CHILDREN'S TESTIMONY, by STEPHEN J. CECI; ET AL.

walk into the room (when he was with my two children), place him on my shoulders, and then exit without him or anyone else muttering a single word. This is precisely what the State led the jury to believe. The State argued that being placed on a bed suggested such an intent. In an environment with a limited height — such as in a house — an individual cannot be easily lifted off of another's shoulders due to the obvious space restriction. It would therefore be reasonable and likely that the rider be dropped on a soft surface, such as a bed.

Again, what these alleged "facts and circumstances" lack is any evidence that any incident ever truly occurred, viz. any evidence that is prevalent in genuine episodes of molestation: grooming, threats to prevent 'telling', gifts/promises to prevent 'telling', inappropriate dialogue, any indicators of lust or affection, any explicit acts of a sexual nature, et al.. Although these conditions are not necessary to prove the charge, I do believe they are necessary — at least to a minimal degree — to allow 404(b) evidence into a trial, especially a trial involving sex charges.

It is my understanding that when filing a writ of habeas corpus, I must first exhaust all potential State remedies; and upon exhausting these remedies, I must file my writ within one year. It is also my understanding that I must include all of the issues that I need to address or challenge in my writ. The dilemma I face is that I have numerous issues that I want to bring before this court, but only two of them have been exhausted at the State level: the 404(b) evidence, and the absence of a lesser-included charge. If I wait until I have exhausted all of my potential State remedies on the following issues, then the one-year expiration on the two most important issues will have expired.

I am enclosing an outline that lists the other issues (with brief details) that I would like this court to review at some point. Please read this outline and let me know if I can file another habeas in the future — once State remedies have been exhausted — or if I must address all of these and the current issues now. If I can address these other issues in the future, then you are welcome to ignore the following pages, since they will be beyond what is necessary at this time

CASE OUTLINE (K2-2003-0412A):


| | | |
|---|---|---|
| 1 | PRETRIAL ISSUES | 39 |
| 2 | TRIAL JUSTICE'S MISCONDUCT, NEGLIGENCE, AND PREJUDICE | 39 |
| 3 | PROSECUTION ISSUES AND CONCERNS | 42 |
| 4 | DEFENSE COUNSEL (INEFFECTIVE ASSISTANCE) | 43 |
| 5 | ACCUSER TESTIMONY | 44 |
| 6 | 404(b) WITNESS TESTIMONY | 46 |
| 7 | PHYSICAL EVIDENCE | 47 |
| 8 | PROCEDURES, MOTIONS, AND JURY INSTRUCTIONS | 47 |
| 9 | INCONSISTENCIES | 48 |
| 10 | JUROR(S) ISSUES AND CONCERNS | 50 |
| 11 | SENTENCING | 51 |

1. PRETRIAL ISSUES:

1.1. - I WAS NEVER INFORMED OF MY MIRANDA RIGHTS

1.2 - AT THE TIME OF MY ARREST, THE DETECTIVE DID NOT ALLOW MY ATTORNEY TO BE PRESENT WHILE THEY WERE PERFORMING A PROPERTY SEARCH. IN FACT MY ATTORNEY WAS ORDERED TO LEAVE THE PREMISES

2. TRIAL JUSTICE'S MISCONDUCT, NEGLIGENCE, AND PREJUDICE:

2.1. - THE TRIAL JUSTICE INTRODUCED BIASED OPINIONS AND PERNICIOUS TERMINOLOGY THAT IMPLIED GUILT (e.g. "FONDLED," "STRADDLED" AND "MOUNTED." THESE ARE ALL GRAPHIC VERBS THAT HAVE A VIVID SEXUAL CONNOTATION

2.1.1. - THIS VERBIAGE WAS LATER REPEATED BY THE PROSECUTOR TO PERSUADE THE JURY

2.1.2. - THE TRIAL JUSTICE EMPLOYED AN ABUNDANT AMOUNT OF LEGALESE IN THE JURY INSTRUCTIONS AND IN THE LIMITING INSTRUCTIONS, THESE TERMS RENDERED THE INSTRUCTIONS CONFUSING AND NEARLY IMPOSSIBLE TO APPLY.

2.2. - THE TRIAL JUSTICE DETAINED ME IN A HOLDING CELL FOR BEING FIVE MINUTES LATE FOR A PRETRIAL MOTION. THIS OCCURRED DURING COURTHOUSE CONSTRUCTION, WHILE AVAILABLE PARKING SPOTS WERE SCARCE.

2.3. - THE TRIAL JUSTICE ASSISTED THE PROSECUTOR BY VOLUNTEERING ADVICE AND RECOMMENDATIONS (e.g. FILING OF 17(c) SUBPOENA, et al.).

2.4. - THE TRIAL JUSTICE ASSURED THE JURY THAT THE TRIAL WILL BE FINISHED BY FRIDAY 6/19/04. THE TRIAL ENDED AT NOON FRIDAY 6/19/04, AS PROMISED.

2.4.1. - BY GUARANTEEING AN EXPEDITIOUS TRIAL, THE TRIAL JUSTICE INDICATED - TO THE JURY - THAT IT WAS AN 'OPEN AND SHUT' CASE.

2.5 - BEFORE MY TRIAL COMMENCED, THE JUDGE ASSURED ME THAT DAVE MCKENNA'S (MY FORMER ATTORNEY) INPATIENT TREATMENT WOULD NOT ADVERSELY IMPACT MY TRIAL. THE NEGATIVE EFFECTS WERE:

* THE FINANCIAL BURDEN OF HAVING TO HIRE YET ANOTHER ATTORNEY AT AN ADDITIONAL $15,000.-
* DAVE WAS FAMILIAR WITH MY PREVIOUS CASE HISTORIES, THE NEW ATTORNEY WAS NOT

2.5. * THE PROSECUTOR MISSTATED NUMEROUS DISCUSSIONS OF PREVIOUS COURT APPEARANCES (e.g. MOTION TO SEVER). THE NEW ATTORNEY WAS UNAWARE OF PREVIOUS DIALOGUE.

* DAVE WAS ALSO REPRESENTING ME IN FAMILY COURT, I COULD NOT AFFORD TO REPLACE HIM.

2.6. - THE TRIAL JUSTICE DISPLAYED OBVIOUS FAVORITISM TOWARD THE PROSECUTION WHILE DEMONSTRATING BLATANT PREJUDICE AGAINST ME AND MY ATTORNEY

2.6.1. - THE TRIAL JUSTICE EXPRESSED BIASED AGGRESSION DURING THE TRIAL BY SCOLDING MY ATTORNEY ON SEVERAL OCCASIONS.

2.6.2. - THE TRIAL JUSTICE HAD AN UNFAIR INFLUENCE IN THE PROSECUTOR'S STATEMENTS (VIZ. SEE 2.1).

2.7. - THE TRIAL JUSTICE ADAMANTLY REFUSED TO ALLOW MY ATTORNEY ADEQUATE PREPARATION OR RESPONSE TIME DURING TRIAL.

2.7.1 - MY ATTORNEY AND I DID NOT HAVE SUFFICIENT TIME TO DISCUSS THE PROSECUTOR'S CLAIMS AND RESPOND TO THEM, NOR WAS THERE TIME TO PREPARE ANY MOTIONS, DUE TO THE JUDGE'S DETERMINATION FOR SWIFT PROGRESSION OF THE TRIAL.

2.8 - THE TRIAL JUSTICE FALSELY CLAIMED THAT I HAD AUTHORITY OVER THE CURRENT ACCUSER AND BOTH OF THE 404(b) WITNESSES DURING THE ALLEGED INCIDENTS; THIS WAS NEVER TRUE.

2.9. - THE TRIAL JUSTICE CONCLUDED THE FINAL JURY INSTRUCTION BY EMPHASIZING THAT THEY BASE THEIR JUDGMENT AS THEY NORMALLY WOULD IN DAY-TO-DAY SITUATIONS; THUS SUPERSEDING PRIOR INSTRUCTIONS THAT SUPPORTED FAIR DECISION-MAKING.

2.10. - THE TRIAL JUSTICE PERSONALLY ADDED HIS OWN CLAIM AND ASSUMPTIONS TO THE PRIOR ALLEGATIONS ('91 & 95) WHEN DETERMINING MY SENTENCE, THEREBY IMPOSING A LENGTHIER SENTENCE THAT CONSEQENTLY FORCES ME TO SERVE TIME FOR REMOTE ALLEGATIONS THAT HE GROSSLY EXAGGERATED.

2.11. - THE TRIAL JUSTICE ALLOWED HIMSELF TO BE MISINFORMED BY READILY ACCEPTING ALL OF THE PROSECUTOR'S SCENARIOS WITHOUT ANY CLEAR EVIDENCE TO SUBSTANTIATE THEM.

2.11.1 - THIS MISINFORMATION LIKELY TAINTED THE JUDGE'S (AND THE JURORS') REASONING.

2.12. - THE TRIAL JUSTICE WAS NOT ONLY DETERMINED TO PRESIDE OVER MY CASE BEFORE THE SCHEDULED RELOCATION OF JUDGES, BUT HE ALSO APPEARED OBSESSED WITH THE NOTION. AS A RESULT, MY TRIAL PROGRESSED HASTILY AND UNFAIRLY.