2.13. - THE TRIAL JUSTICE CONSCIOUSLY TEETERED ON THE EDGE OF WHAT WAS UNJUST, IMMORAL AND UNFAIR, ESPECIALLY WHEN HIS ACTIONS WOULD NOT BE RECORDED (e.g. SNEERS, NODS, GESTICULATIONS, ETAL.).

2.13.1 - OBVIOUSLY THE TRIAL JUSTICE WAS AWARE THAT HIS NON-VERBAL COMMUNICATION WOULD BE WITNESSED BY THE JURY, BUT NOT RECORDED BY THE COURT STENOGRAPHER.

2.14. - THE TRIAL JUSTICE — USING HIS OWN IMAGINATION AND ASSUMPTIONS — 'FILLED IN THE BLANKS' IN THE ACCUSER'S TESTIMONY IN A DESPICABLE ATTEMPT TO MANUFACTURE A FEASIBLE ACCOUNT OF THE ALLEGED AMBIGUOUS EVENTS.

2.15 - THE TRIAL JUSTICE REFUSED TO SET BAIL WHILE I WAS AWAITING SENTENCING; AND HIS PRIMARY REASON WAS PREVIOUS CHARGES, WHICH WERE BASED ON HEARSAY FROM OUT-DATED POLICE REPORTS

2.16. - A CONFLICT MAY HAVE OCCURRED WHEN THE TRIAL JUSTICE DECIDED TO PRESIDE OVER BOTH OF MY TRIALS. HIS AWARENESS OF ONE TRIAL MIGHT HAVE PREVENTED HIM FROM BEING OBJECTIVE IN THE OTHER. HENCE, PRESIDING OVER BOTH CASES RENDERS THEM BOTH UNFAIR — ESPECIALLY DURING SENTENCING.

2.17. - I BELIEVE THE TRIAL JUSTICE VIOLATED SEVERAL CODES OF JUDICIAL CONDUCT AND NUMEROUS CANONS CONTAINED WITHIN, INCLUDING:

* CANON 2-A: "A JUDGE SHALL AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPIETY IN ALL OF THE JUDGE'S ACTIVITIES."
* CANON 1-A: "A JUDGE SHALL UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY."
* CANONS 3-B, 3-6, 8-10; 3-C, 2, 4; 3-D, 2; 3-E, 1: "A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE IMPARTIALLY AND DILIGENTLY.

2.18. - THE TRIAL JUSTICE BLATANTLY DEMONSTRATED HIS SUPPORT AND FAVORITISM FOR THE PROSECUTION, THIS BEHAVIOR RENDERED HIM INCAPABLE OF BEING OBJECTIVE. MOREOVER, HIS ACTIONS SERVED TO ONLY NEGATIVELY INFLUENCE THE JURY AGAINST ME. HENCE, HE SHOULD HAVE REMOVED HIMSELF FROM BOTH TRIALS

3. PROSECUTION ISSUES AND CONCERNS:

3.1 - THE PROSECUTOR MALICIOUSLY DOCTORED PREVIOUS ALLEGATIONS TO SUPPORT HER AGENDA.

3.2 - THE DETECTIVE INFORMED MY EX-WIFE THAT I WOULD BE FOUND GUILTY, AND THAT I WOULD SERVE A TWENTY YEAR PRISON TERM (THIS OCCURRED WEEKS BEFORE EITHER OF MY TRIALS BEGAN).

3.3 - THE DETECTIVE AND THE PROSECUTOR RELENTLESSLY BARRAGED THE ACCUSER WITH PROBING QUESTIONS UNTIL HE AND HIS PARENTS AGREED TO PRESS CHARGES EIGHT MONTHS LATER.

3.4. - TO PERSUADE THE JURY, THE PROSECUTOR EMPLOYED EXAGGERATED THEATRICS; TO WIT SHE OBSTINATELY SHOUTED OUT "GUILTY!" NUMEROUS TIMES WHILE POINTING HER FINGER AT ME ONLY INCHES FROM MY FACE.

3.5. - THE PROSECUTOR POSTPONED & DELAYED COURT DATES WHILE CLAIMING TO BE STILL GATHERING EVIDENCE," YET NO PHYSICAL EVIDENCE WAS PRESENTED DURING THE TRIAL.

3.5.1 - THE PROSECUTION WAS ALLOWED TO DELAY COURT PROCEEDINGS FOR MONTHS, BUT I WAS NOT AFFORDED THE OPPORTUNITY TO SPEAK WITH MY ATTORNEY FOR MORE THAN A FEW SECONDS DURING MY HASTY TRIAL.

3.6. - THE PROSECUTOR SPECIOUSLY SUGGESTED MY ASSUMED GUILT, INTENT, AND MOTIVE WITHOUT EVER PROVIDING ANY CONCRETE EVIDENCE.

3.7. - THE PROSECUTOR MISLED THE TRIAL JUSTICE IN COURT AND IN CAMERA BY FREELY PROVIDING HIM WITH AN ABUNDANCE OF HER OWN OPINION, SPECULATION, AND UNSUBSTANTIATED CLAIMS.

3.8. - THE PROSECUTOR EMPLOYED NUMEROUS LEADING AND SUGGESTIVE QUESTIONS DURING HER DIRECT EXAMINATION OF THE ACCUSER.

3.9. - THE PROSECUTOR DID NOT PROVIDE ANY EVIDENCE OF MY ALLEGED INTENT OR MOTIVE, NOR WAS SHE ABLE TO DEMONSTRATE ANY PROPENSITY TO COMMIT SUCH A CRIME.

3.10. - THE PROSECUTOR DID NOT PRESENT ANY PHOTOS OF THE ALLEGED CRIME SCENE; SHE RELIED TOTALLY ON THE VAGUE RECALLECTIONS OF THE ACCUSER AND THE DETECTIVE, BOTH OF WHOM VOICED CONFLICTING STATEMENTS

3.11. - THE PROSECUTOR CLAIMED THAT I WAS IN A POSITION OF AUTHORITY OVER THE ACCUSER, YET SHE NEGLECTED TO ADDRESS THE ABSOLUTE POSITION OF AUTHORITY THAT THE DETECTIVE HAD.

4. DEFENSE COUNSEL (INEFFECTIVE ASSISTANCE):

4.1. - MY ATTORNEY, GERARD DONLEY, PREVIOUSLY REPRESENTED ONE OF THE 404(b) WITNESSES (MR. ABERCROMBIE) WHO TESTIFIED AGAINST ME.

4.2. - MY ATTORNEY DID NOT PERFORM OR ADDRESS MANY OF THE TASKS THAT I REQUESTED OF HIM, INCLUDING:

* HE DID NOT GIVE ME AN OPPORTUNITY TO VIEW OR INSPECT ANY EVIDENCE (e.g. TAPES, LOGS, STATEMENTS, DISCOVERY PACKAGE, ET AL.). AS A RESULT I WENT TO TRIAL WITHOUT ANY DETAILS OR KNOWLEDGE OF THE ALLEGATION.
* HE DID NOT REQUEST A TAINT HEARING CONCERNING THE UNFAIR INTERVIEWING METHODS USED ON THE ACCUSSER (e.g. LEADING, SUGGESTIVE, AND COMPOUND QUESTIONING; REPETITIVE QUESTIONING; THE EFFECTS OF BEING INTERVIEWED BY AN AUTHORITY FIGURE, ET AL.).
* HE DID NOT REQUEST A COMPETENCY HEARING FOR THE ACCUSER OR THE 404(b) WITNESSES.
* HE DID NOT HIRE, CONSULT, OR CONSIDER AN EXPERT WITNESS.
* HE DID NOT INCLUDE ANY DEFENSE WITNESSES
* HE DID NOT SUBPOENA ANY D.C.Y.F., SCHOOL (BEHAVIORAL), OR PSYCHOLOGICAL RECORDS OF THE ACCUSER OR ANY OF THE 404(b) WITNESSES
* HE CANCELED NUMEROUS APPOINTMENTS – APPOINTMENTS THAT WERE NECESSARY IN ORDER FOR HIM TO BE ADEQUATELY PREPARED FOR TRIAL. HENCE, MOST OF OUR CRITICAL DISCUSSIONS OCCURRED IN COURT DURING TRIAL.
* HE DID NOT VISIT OR VIEW THE ALLEGED CRIME SCENE AS REQUESTED
* HE DID NOT RESPOND TO MY WRITTEN REQUESTS THAT WERE DELIVERED TO HIM VIA U.S. MAIL, E-MAIL, CERTIFIED MAIL, AND PERSONALLY DROPPED-OFF.
* HE DID NOT REQUEST EXCULPATORY EVIDENCE

4.3. - MY ATTORNEY NEGLECTED TO PROVIDE AN OPENING STATEMENT (THIS MIGHT HAVE HAD NEGATIVE REPERCUSSIONS, ESPECIALLY IF THE JURORS ASSUMED THAT I HAD NO DEFENSE).

4.4. - MY ATTORNEY (G. DONLEY) DID NOT COMMUNICATE WITH CO-COUNSEL (D. MCKENNA) WHO WAS NEVER RELEASED FROM HIS OBLIGATION TO REPRESENT ME.

4.5. - MY ATTORNEY DID NOT RESPOND TO MY CONCERNS DURING TRIAL (e.g. BREVITY OF THE TRIAL, FALSE TESTIMONY OF ACUSSER AND WITNESSES, JURORS' PERSONAL AGENDAS (SCHEDULED TRIP AND HOUSE CLOSING), JURORS' UNDERSTANDING OF LIMITING AND FINAL INSTRUCTIONS, JUDGE'S BLATANT PREJUDICE (SNEERS, REMARKS, GAZES, ET AL.)).

4.6. - MY ATTORNEY DID NOT EDUCATE THE JURY REGARDING THE WELL DOCUMENTED FLAWS OF CHILD-WITNESS TESTIMONY, OR THE PERNICIOUS EFFECTS OF IMPROPER INTERVIEW METHODS.

4.7. - MY ATTORNEY PROVED TO BE INCOMPETENT, SINCE HE NEVER FILED ANY PRETRIAL MOTIONS SEEKING TO INSPECT THE SO-CALLED EVIDENCE; HE CONDUCTED NO INVESTIGATION OF THE CIRCUMSTANCES RELEVANT TO THE ALLEGATIONS; HE DID NOT PREPARE FOR CROSS-EXAMINATIONS OF THE ACCUSER, THE 404(b) WITNESSES, OR THE DETECTIVE UNTIL THE EVENING PRIOR TO THEIR TESTIMONY

4.8. - MY ATTORNEY DID NOT PREPARE ANY LIMITING INSTRUCTIONS — TO PRESENT TO THE COURT — THAT WOULD ADDRESS THE PROPER USE OF 404(b) TESTIMONY VIZ. TO DEMONSTRATE A "COMMON PLAN OR SCHEME" (A.K.A. SIGNITURE EVIDENCE).

5. <u>ACCUSER TESTIMONY:</u>

5.1. - ACCUSER WAS REHEARSED IN THE COURTROOM THE DAY BEFORE THE TRIAL BEGAN. HIS TESTIMONY SEEMED TO COME FROM ROTE MEMORY RATHER THAN FROM AN ACTUAL RECOLLECTION OF AN EXPERIENCED EVENT, THIS WAS EVIDENT FROM HIS WELL-REHEARSED, STOIC RESPONSES TO THE PROSECUTOR'S PROMPTS.

5.2. - THE ACCUSER WAS INTERVIEWED AND QUESTIONED NUMEROUS TIMES BY MULTIPLE PEOPLE (I.E. HIS FATHER, A POLICE OFFICER, THE DETECTIVE, THE PROSECUTOR, ETC.). ACCORDING TO THE ACCUSER, THE DETECTIVE AND THE PROSECUTOR EACH INTERVIEWED HIM AT LEAST THREE TIMES. THIS CONSTANT BARRAGE OF QUESTIONING POTENTIALLY ALTERED HIS TESTIMONY TO THE POINT THAT IT IS NO LONGER RELIABLE.

5.2.1 - THESE PREVIOUS INTERVIEWS — MUCH LIKE HIS DIRECT EXAMINATION — PROBABLY EMPLOYED SUGGESTIVE, LEADING, AND REPETITIVE QUESTIONING

50



5.3 - THE ACCUSER WAS NOT ADEQUATELY ASSESSED FOR COMPETENCY, HONESTY, OR WHETHER HIS MEMORY WAS TAINTED

5.4 - THE ACCUSER WAS ODDLY ABLE TO RECALL ALLEGED CLOTHING WORN, YET HE WAS UNABLE TO REMEMBER SPECIFIC DATES OR UNIQUE FURNISHINGS RELATED TO THE ALLEGED EVENTS. THESE INCONSISTENCIES ALSO INDICATE THAT HE WAS REHEARSED.

5.4.1 - SINCE THE ACCUSER DID NOT NARROWLY SPECIFY THE DATES WHEN THE ALLEGED EVENT OCCURRED, I WAS RENDERED TOTALLY INCAPABLE OF PROVIDING AN ALIBI.

5.5. - THE ACCUSER MERELY TESTIFIED THAT HE WAS 'TOUCHED' (WHILE FULLY CLOTHED); HIS ONLY OTHER CLAIM WAS THAT HIS GROIN WAS 'SNIFFED' (ALSO WHILE FULLY CLOTHED). THESE ALLEGATIONS DO NOT SUPPORT OR WARRANT A FELONY CHARGE OF SUCH MAGNITUDE.

5.5.1. - MOST CLAIMS OF BEING TOUCHED WERE INITIATED BY THE PROSECUTOR THROUGH LEADING AND SUGGESTIVE QUESTIONING.

5.6. - THE ACCUSER'S DESCRIPTION OF MY BEDROOM ALSO EQUALLY DESCRIBES ALL TYPICAL AMERICAN BEDROOMS (i.e. IT CONTAINED A BED, A DOOR, AND FRAMED PHOTOGRAPHS).

5.6.1 - HE COULD NOT DESCRIBE ANY UNCOMMON OR UNIQUE ITEMS IN THE BEDROOM (e.g. A LARGE BRASS DOG, A WALL-MOUNTED T.V., STUFFED ANIMALS, AN OVER-SIZED CEILING FAN, A FLOOR MODEL DE-HUMIDIFIER, VERTICAL BLINDS (NO CURTAINS), A WOODEN PHONE-BENCH, A BOSE STEREO, NUMEROUS CANDLES, THREE LAMPS, TWO BUREAUS, ET AL.).

5.7. - IT IS UNCLEAR WHETHER THE ACCUSER WAS EVER PROFESSIONALLY EVALUATED TO DETERMINE IF ABUSE OR ANY CONTACT ACTUALLY OCCURRED. LIKEWISE, IT IS ALSO UNCLEAR IF THE ACCUSER ATTENDED ANY COUNSELING TO DEAL WITH OR ADDRESS THE ALLEGED TOUCH.

5.8. - WHEN MY ATTORNEY ASKED THE ACCUSER IF HE WOULD "GET IN TROUBLE" IF HE CHANGED HIS STORY, THE ACCUSER SAID, "YES." THIS CONFIRMS THAT THE ACCUSER — TO SOME DEGREE — FELT THREATENED IF HE CHANGED HIS STORY.

5.9. - THE ACCUSER NEVER MADE ANY CLAIMS OF A SEXUAL NATURE, NOR DID HE EVER SUGGEST THAT THERE MIGHT HAVE BEEN AN INTENT OF A SEXUAL OR AN INAPPROPRIATE NATURE.

6. 404(b) WITNESS TESTIMONY:

6.1 - THE INCLUSION OF 404(b) TESTIMONY WAS HIGHLY PREJUDICIAL, UNFAIR AND SUPERFLUOUS. IN FACT, THE PREJUDICIAL EFFECT FAR OUTWEIGHED ANY PROBATIVE VALUE.

6.1.2. - THE 404(b) WITNESSES' ALLEGATIONS WERE VAGUE, AND UNRELATED TO THE CURRENT CHARGES

6.2. - MR. COLARDO'S TESTIMONY WAS UNWARRANTED, SINCE HIS PREVIOUS CLAIM OF ASSAULT WITH INTENT TO COMMIT SEXUAL ASSAULT WAS WITHOUT MERIT; HENCE IT WAS DISMISSED

6.3. - NEITHER OF THE 404(b) WITNESSES EVER SUGGESTED THAT THEY WERE TOUCHED IN A SEXUAL MANNER.

6.4. - QUESTIONING SESSIONS AND INTERVIEWS OF 404(b) WITNESSES WERE NEVER ASSESSED OR VERIFIED FOR ACCURACY OR INCONSISTENCY

6.5 - THE TRIAL JUSTICE ALLOWED 404(b) WITNESSES BEFORE HEARING TESTIMONY OF THE ACCUSER, THUS, HE ALLOWED THEIR TESTIMONY BEFORE DETERMING ITS RELEVANCE.

6.6. - 404(b) EVIDENCE WAS ALLOWED IN THIS TRIAL (SECOND CHARGE), YET IT WAS NOT ALLOWED IN THE SECOND TRIAL (INITIAL CHARGE). THIS TRIAL ENDED WITH A GUILTY VERDICT, AND THE SECOND TRIAL ENDED WITH AN ACQUITTAL. THE ONLY PROCEDURAL DIFFERENCES IN THE TWO TRIALS WAS THE 404(b) EVIDENCE AND THE LESSOR-INCLUDED INSTRUCTION. NOTE: THIS CASE WAS THE RESULT OF AN OVER-ZEALOUS INVESTIGATION (WITCH HUNT) FROM THE INITIAL CHARGE.

6.7. - THE PROSECUTOR CLAIMED THAT I WAS ULTIMATELY RESPONSIBLE FOR THE 404(b) WITNESSES' FAULTS AND FAILURES, THEREBY ELICITING UNJUST SYMPATHY FROM THE JURORS.

6.8. - ONE 404(b) WITNESS, MR. ABERCROMBIE — WHO IS CURRENTLY SERVING A FORTY YEAR PRISON SENTENCE FOR A VIOLENT RAPE — CLAIMS THAT THE PROSECUTION MADE NO PROMISES TO HIM. YET, FOR AN INMATE WITH A FORTY YEAR PRISON TERM, THE MERE OPPORTUNITY TO COMMUTE TO COURT MAY HAVE BEEN A REWARD IN ITSELF. NOTE: SHORTLY AFTER PROVIDING HIS TESTIMONY HE WAS UPGRADED TO A LESSER SECURITY FACILITY THAT OFFERS MORE PRIVILEGES AND MORE FREEDOM.

6.9. - THE 404(b) EVIDENCE DID NOT ADHERE TO THE CONDITIONS SET FORTH IN RULE 403

7. PHYSICAL EVIDENCE:

7.1. - NO PHYSICAL EVIDENCE WAS INCLUDED OR PRESENTED DURING MY TRIAL

8. PROCEDURES, MOTIONS, AND INSTRUCTIONS:

8.1 - MY RIGHT TO 'DUE PROCESS' WAS IGNORED ON NUMEROUS OCCASIONS, THESE RIGHTS INCUDE: MY RIGHT TO INSPECT ANY EVIDENCE, MY RIGHT TO COMPETENT COUNSEL, MY RIGHT TO A FAIR AND IMPARTIAL TRIAL, ET AL.

8.2. - THE LIMITING INSTRUCTIONS WERE VAGUE AND MISLEADING, BUT MORE IMPORTANTLY, THEY WERE HUMANLY IMPOSSIBLE TO APPLY.

8.3. - I WAS NOT ALLOWED TO CONFER WITH MY ATTORNEY DURING TRIAL, OTHER THAN TO NOD.

8.4. - THE LEAD INVESTIGATOR, DET. SASSI, DID NOT MENTION OR PRESENT ANY CERTIFICATION OR PROOF OF TRAINING REGARDING PROPER INTERVIEWING TECHNIQUES OF CHILD WITNESSES.

8.4.1 - THE DETECTIVE WAS UNAWARE OF THE DANGERS OF LEADING, SUGGESTIVE, REPETITIVE, AND COMPOUND QUESTIONING.

8.5. - THE PROSECUTOR DID NOT PRESENT AN EXPERT WITNESS (OR ANY OTHER QUALIFIED PROFESSIONAL) WHO COULD CORROBORATE HER CLAIM REGARDING MY ALLEGED INTENT. THEREFORE, THE PROSECUTOR'S UNQUALIFIED CLAIM WAS BASED PRIMARILY ON SPECULATION, ASSUMPTION AND CONJECTURE. THE BASIS OF THIS CHARGE HINGES ON PROVING MY SO-CALLED INTENT; LAWFULLY, IF PROOF OF INTENT CANNOT BE ESTABLISHED, THEN I CANNOT BE CONVICTED OF THE OFFENSE

8.6. - NEITHER THE TRIAL JUSTICE, THE PROSECUTOR, NOR MY ATTORNEY, ACKNOWLEDGED ANY OF THE NUMEROUS INCONSISTANCIES OR ISSUES (SUCH AS THOSE LISTED HERE), NOR DID THEY RECOGNIZE THE FALLIBLE IMPACT OF THEIR NEGLIGENCE.

8.7. - THE ARRESTING AUTHORITIES DID NOT COMPLETE OR SUBMIT THE MANDATORY "SEXUAL ASSAULT EVALUATION FORM WHEN THEY INITIALLY QUESTIONED THE ACCUSER.

8.8. - ACCORDING TO R.I.G.L., A DEFENDANT'S CRIMINAL RECORD (i.e. PRIOR BAD ACTS) CANNOT "GENERALLY" BE INTRODUCED IF DEFENDANT DOES NOT TESTIFY.

8.9. - ACCORDING TO R.I.G.L, "EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS ARE NEVER ADMISSIBLE TO PROVE CHARACTOR" AND "EVIDENCE OF OTHER AND DISTINCT CRIMINAL ACTS IS GENERALLY PREJUDICIAL AND INADMISSABLE." YET THIS IS PRECISELY WHAT OCCURRED IN MY TRIAL.

8.10. - ACCORDING TO RIGL., "EVIDENCE OF THE ACQUITTAL OF A PRIOR CHARGE EITHER BY STIPULATION, THE PARTIES TESTIMONY, OR AN INSTRUCTION FROM THE TRIAL JUSTICE MUST BE ALLOWED. FAILURE TO ALLOW SUCH REBUTTAL EVIDENCE IS A DENIAL OF 'DUE PROCESS' AND CONSTITUTES REVERSIBLE ERROR."

8.10.1. - DUE TO MY CHARGES BEING TRIED IN REVERSE ORDER, THE ACQUITTAL OF MY FIRST CHARGE OCCURRED AFTER MY CONVICTION OF MY SECOND CHARGE. THIS RENDERED ME INCAPABLE OF PRESENTING ANY ACQUITTAL EVIDENCE AT THE APPROPRIATE TIME. HAD MY TRIALS PROGRESSED IN CHRONOLOGICAL ORDER, I WOULD HAVE HAD AN OPPORTUNITY TO PRESENT ACQUITTAL EVIDENCE

8.10.2. - THE DISMISSAL MY PRIOR CHARGE (ASSAULT WITH INTENT TO COMMIT SEXUAL ASSAULT) WAS ALSO KEPT FROM THE JURY.

8.11. - ACCORDING TO RI.G.L., THE TRIAL JUSTICE SHOULD GIVE CAUTIONARY INSTRUCTIONS TO THE JURY, SHORTLY AFTER WITNESS' TESTIMONY, INSTRUCTING THEM THAT THE EVIDENCE WAS ADMITTED FOR THE LIMITED PURPOSE OF SHOWING DEFENDANT'S MOTIVE OR INTENT. THIS INSTRUCTION DID NOT OCCUR SHORTLY AFTER MR. ABERCROMBIE'S TESTIMONY

9. INCONSISTENCIES:

9.1. - THE DETECTIVE'S AND THE ACCUSER'S DESCRIPTION OF THE ALLEGED CRIME SCENE (MY BEDROOM) DIFFERED GREATLY. IN SOME INSTANCES THEIR DESCRIPTIONS WERE IN DIRECT CONFLICT.

* THE ACCUSER DESCRIBED A ROOM WITH ONLY A MATTRESS, A DOOR, AND SOME PHOTOS (THIS DESCRIBES ALL BEDROOMS). THE DETECTIVE DESCRIBED A ROOM WITH MANY OTHER FURNISHINGS.

* THE ACCUSER TESTIFIED THAT THERE WAS NO LOCK ON THE BEDROOM DOOR. CONVERSELY, THE DETECTIVE STATED THAT I CLOSED AND LOCKED THE DOOR.

* THE ACCUSER CLAIMED TO HAVE SEEN MY WEDDING PHOTOS, YET MY WIFE AND I DID NOT HAVE A FORMAL WEDDING. WE WERE MARRIED VIA THE JUSTICE OF THE PEACE, MY WIFE DID NOT OWN OR BORROW A WEDDING GOWN, AND WE HAD NO PHOTOS OF THE OCCASION.

* THE ACCUSER DESCRIBED A NEARLY BARE ROOM, YET THE ROOM WAS FULL OF FURNITURE AND OTHER ITEMS, INCLUDING: TWO BUREAUS, A PHONE SETTEE, A FLOOR MODEL DEHUMIDIFIER, A WALL-MOUNTED T.V., A LARGE BRASS DOG, A VARIETY OF STUFFED ANIMALS, AN OVER-SIZED CEILING FAN, A BOSE STEREO, ET AL.

9.2. - THE ACCUSER CLAIMED THAT NEARLY EVERYTHING OCCURRED "THREE TIMES;" THREE ONE-ON-ONE INTERVIEWS WITH THE DETECTIVE, THREE ONE-ON-ONE INTERVIEWS WITH THE PROSECUTOR, AND — IRRATIONALLY — A TOTAL OF THREE INTERVIEWS, INCLUDING THE INTERVIEWS WITH THE DETECTIVE AND THE OTHERS WITH THE PROSECUTOR. THIS MAY INDICATE THAT THE ACCUSER WAS INSTRUCTED TO SAY "THREE TIMES" WHEN THE QUESTION INVOLVED NUMBERS AND HE DID NOT HAVE AN ANSWER OF HIS OWN.

9.3. - THE ACCUSER WAS UNNATURALLY CALM AND PEACEFUL, EXPRESSING NO CONCERN OR EMOTION, IN A MANNER THAT WAS CONSISTANT WITH SOMEONE WHO WAS NOT VICTIMIZED, BUT RATHER REHEARSED.

9.4. - AFTER MY FIRST TRIAL ENDED WITH A GUILTY VERDICT, THE PROSECUTOR PROPOSED AN OFFER THAT IF I WERE TO ENTER A NOLO PLEA PRIOR TO THE SECOND TRIAL, I WOULD ONLY SERVE A FIVE YEAR PRISON SENTENCE FOR BOTH.

9.4.1 - I DID NOT ACCEPT HER OFFER. THE SECOND TRIAL RESULTED IN A NOT GUILTY VERDICT. HAD ACCEPTED HER OFFER, I WOULD HAVE BEEN DEEMED GUILTY OF TWO COUNTS WITH ONLY FIVE YEARS TO SERVE. YET, WHEN I WAS ACQUITTED DURING THE SECOND TRIAL, THUS CONSIDERED GUILTY OF ONLY THE FIRST TRIAL (ONE CHARGE), I WAS SENTENCED TO A THIRTY YEAR PRISON TERM (20 TO SERVE). MY CURRENT SENTENCE DEFIES ALL LOGIC AND COMMON-SENSE.

10. JUROR(S) ISSUES AND CONCERNS:

10.1. - THREE OF THE JURORS (INCLUDING THE FOREMAN) AND I HAD CASUAL CONTACT OUTSIDE OF THE COURTROOM ON TWO OCCASIONS, ONCE DURING TRIAL AND ONCE DURING DELIBERATIONS. THIS CONTACT OCCURRED WHILE I WAS DINING AT AN ADJACENT DELICATESSEN/RESTAURANT WITH MY SISTER, AND MY PASTOR.

10.1.1 - THE JURORS' PROHIBITED OBSERVATION OF ME OUTSIDE OF COURT MAY HAVE PROVIDED THEM UNFAIR INSIGHT - INSIGHT THAT MAY HAVE NEGATIVELY AFFECTED THEIR DECISION.

10.2. - MY ATTORNEY AND ANOTHER JUROR WERE INVOLVED IN A BRIEF DISCUSSION OUTSIDE THE COURTROOM.

10.3. - ONE JUROR BECAME A VICTIM OF A CRIME (VANDALISM AND THEFT) DURING A BREAK FROM DELIBERATIONS. THE JUROR'S CAR WAS BROKEN INTO, AND MONEY WAS CLAIMED TO HAVE BEEN STOLEN. ALL OF THE JURORS WERE SENT HOME FOR THE REMAINDER OF THE DAY; WITHIN HOURS OF RETURNING THE NEXT MORNING, I WAS FOUND GUILTY.

10.4. - ONE JUROR WAS A CO-WORKER OF MY EX-WIFE. MY EX-WIFE CONTROLLED THE TECHNOLOGY AND PROJECT BUDGETS FOR THE JUROR'S DEPARTMENT AT G-TECH.

10.5. - SOME OF THE JURORS WERE IN A HURRY, AND THEY WERE ASSURED THAT THE TRIAL WOULD BE BRIEF.

* ONE JUROR HAD A HOUSE CLOSING SCHEDULED FOR 5:00pm ON 6/19/04, THE SAME DAY THAT I WAS FOUND GUILTY (PRIOR TO 5:00pm.).
* ONE JUROR HAD VACATION PLANS FOR THE WEEKEND, THE FLIGHT WAS SCHEDULED TO DEPART FRIDAY EVENING 6/19/04, THE SAME DAY THAT I WAS FOUND GUILTY.
* ONE JUROR KEPT NODDING OFF DURING THE TRIAL, THUS MISSING CRUCIAL DETAILS. THIS JUROR, LATER, HAD TO DEPEND ON OTHER JURORS, SINCE SHE COULD NOT POSSIBLY MAKE A DETERMINATION ON HER OWN ACCORD.

10.6. - THE JURORS DID NOT ASK TO HAVE THE AMBIGUOUS LIMITING-INSTRUCTIONS CLARIFIED. THE LIMITING-INSTRUCTIONS COULD HAVE BECOME MORE UNCLEAR (OR FORGOTTEN) BETWEEN 6/16/04 (LAST INSTRUCTION) AND 6/19/04 (VERDICT).