10.7. - WHEN ONE JUROR BECAME THE VICTIM OF A CRIME, THE EFFECT OF THE INCIDENT (IF ANY) ON THE REMAINING JURORS WAS NEVER FULLY ADDRESSED.

10.8. - ONE JUROR WAS A FORMER ACQUAINTANCE OF MY SISTER (WHO WAS ALSO IN THE COURTROOM).

10.9. - IN TOTAL, TEN JURORS WERE DIRECTLY AFFECTED BY THE ABOVE ISSUES, AND ALL OF THE JURORS WERE INDIRECTLY AFFECTED BY THE VANDALISM INCIDENT. THE CUMULATIVE EFFECT OF ALL OF THESE ISSUES IS UNIGNORABLE, AND THIS EFFECT MUST HAVE HAD AN IMPACT - TO SOME DEGREE - ON THEIR DECISIONS.

11. SENTENCING:

11.1 - THE TRIAL JUSTICE RELIED ON MISINTERPRETED HEARSAY STATEMENTS FROM 1991 AND 1995 IN DETERMINING THE LENGTH OF MY SENTENCE.

11.2. - WHILE IN THE COURTROOM, PRIOR TO SENTENCING, THE PROSECUTOR INSTRUCTED THE BALIFF TO SCOLD ME IN SIGHT OF THE JUDGE.

11.3 - THE JUDGE CONJURED UP EVENTS THAT NEVER OCCURRED OR WERE NEVER SUBSTANCIATED. HE ALSO 'FILLED-IN' GAPS OF WITNESS AND ACCUSER TESTIMONY, WITH HIS OWN FALLIBLE IMAGINATION.

11.4 - THE JUDGE'S IMPOSED SENTENCE EXCEEDED THE PROSECUTOR'S RECOMMENDATION (15 YEARS) AND R.I.G.L. GUIDELINES (0-3 YEARS, TOUCH OVER THE CLOTHING BY NON-RELATIVE). THE JUDGE IMPOSED A THIRTY YEAR SENTENCE (20 TO SERVE). THIS WAS DOUBLE THE PROSECUTOR'S RECOMMENDATION, AND IT WAS ALSO EXTREME FOR A FIRST CONVICTION OF A CHARGE OF THIS NATURE, ESPECIALLY CONSIDERING THE CIRCUMSTANCES OF MY CASE (AS OUTLINED HERE).

11.5. - I WAS ASKED TO SPEAK, BUT I WAS NOT ALLOWED TO HAVE MY CUFFS REMOVED. THIS RENDERED ME INCAPABLE OF ACCESSING MY PREPARED STATEMENTS.

11.6. - THE PROSECUTOR STATED THAT MY PREVIOUS CASES WERE AMENDED (REDUCED) TO "SAVE" THE WITNESSES FROM HAVING TO TESTIFY. THIS IS NOT TRUE.

11.7 - THE PROSECUTOR SPREAD SO-CALLED EVIDENCE AROUND THE COURTROOM, KNOWING THAT NO PHYSICAL EVIDENCE WAS ALLOWED IN TRIAL, AND THAT IT COULD NOT BE USED OR CONSIDERED DURING SENTENCING. THE ONLY PURPOSE OF THIS PERNICIOUS DEMONSTRATION WAS TO ELICIT PSYCHOLOGICAL PERSUA$ION, IN FAVOR OF A LENGTHIER SENTENCE.

11.8. - THE JUDGE REFUSED TO SET BAIL WHILE I WAS AWAITING APPEAL, YET MY ATTORNEY AND THE PROSECUTOR WERE BOTH IN FAVOR OF BAIL.

11.9. - THE PROSECUTOR CLAIMED THAT THE ACCUSER'S MOTHER'S MISCARRIAGE WAS MY FAULT, DUE TO THE STRESS THAT I ALLEGEDLY CAUSED

11.10. - THE PRESENTENCE REPORT WAS INCOMPLETE AND ONE-SIDED, SINCE I WAS NOT ABLE TO SPEAK OPENLY DUE TO THE PENDING CHARGE/TRIAL (ACQUITTAL).

11.11 - THE BULK OF THE PRESENTENCE REPORT WAS PRODUCED USING OLD POLICE REPORTS AND NARRATIVES FROM CASES THAT WERE DISMISSED OR AMENDED. NONE OF THE INFORMATION IN THESE STATEMENTS WAS EVER SUBSTANCIATED.

11.12. - THE JUDGE CLAIMED THAT MY SUPPORTERS DID NOT KNOW ME WELL, AND THAT THEY WERE OBLIVIOUS TO MY MOTIVES AND INTENT. THESE SUPPORTERS INCLUDING FAMILY MEMBERS, OLD FRIENDS, AND CLERGY; COMBINED THESE PEOPLE KNEW ME FOR MORE THAN 110 YEARS. YET, THE JUDGE NEVER DIRECTLY COMMUNICATED WITH ME AND ONLY KNEW ME (VISUALLY) FOR SEVERAL HOURS

The trial justice should have excluded the 404(b) witness testimony as evidence of a "common plan or scheme," because it unavoidably — and by pure consequence — tainted my character and created prejudice in the minds of the jurors, and it suggested that I acted in conformity therewith in violation of Rule 404(b) of the Rhode Island Rules of Evidence. Similarly, the trial justice must exclude evidence of other criminal activity unless that evidence is substantially relevant for some purpose other than to show a probability that I committed the crime because I am a man believed to be of criminal character. McCORMICK, EVIDENCE § 190 at 447 (2d ed. 1972). It is impermissible to suggest that my prior alleged offenses some how makes me more likely to have acted in a similiar manner in the context of the present charge. Also, as a general rule, evidence that shows or tends to indicate that I had participated in a crime for which I am not on trial, even if it is a similiar type of crime, is irrelevant and inadmissible. STATE v. CARDOZA, 465 A.2d 200, 202 (R.I. 2003); STATE v. MASTRACCHIO, 112 R.I. 487, 493, 312 A.2d 190 (1973); PEOPLE v. KELLEY, 66 CAL.2d 232, 57 CAL. RPTR. 363, 424 P.2d 947 (1967); ROSS v. STATE, 276 Md. 664, 350 A.2d 680 (1976); and WHITTY v. STATE, 34 Wis.2d 278, 149 N.W.2d 557 (1967). Moreover, the 404(b) testimony was not introduced to prove an element material to the chain of proof of the alleged crime at bar. See e.g. STATE v. ACQUISTO, 463 A.2d 122, 128 (R.I. 1983); STATE v. CLINE, 122 R.I. 297, 330, 405 A.2d 1192, 1210 (1979).

The similarity between my prior alleged bad acts and the current charge is the predominant factor or touchstone in the test for 404(b)'s special relevance. See UNITED STATES v. ARIAS-MONTOYA, 967 F.2d at 712-13 (summerizing circumstances which would constitute "special relevance," including that prior bad acts: (1) closely mirror the new charge, (2) were part of a common scheme or a course of continuious dealing, or (3) provided the context for the newly charged offense); see also UNITED STATES v. HADFIELD, 918 F.2d 987, 994 (1st CIR. 1990).

The reason for the exclusionary principle of 404(b) is to avoid the potential of prejudicial evidence, viz. the real possibility that the jury's verdict may mask a finding of guilt which is based upon the involvement of unrelated alleged crimes. SPENCER V. TEXAS, 385 U.S. 554, 560, 87 S. CT. 648, 652, 17 L. ED. 2d 606, 612 (1967). The key purpose of excluding prior bad acts evidence is the practical experience that its disallowance tends to prevent confusion of the issues, unfair surprise, and undue prejudice. STATE V. COLVIN, 425 A.2d 508, 511 (R.I. 1981) (QUOTING MICHELSON V. UNITED STATES, 335 U.S. 469, 476, 69 S.CT. 213, 218-19, 93 L. ED. 168, 174 (1948).

Unlike the limiting instructions in my case, "a trial justice's instructions with regard to prior bad acts must serve as the strong and clearly marked guardrails that prevent jurors from falling into such an evidentiary abyss, and that keep them on the strait and narrow path to a just and true verdict based on the law and the evidence presented." STATE V. GARCIA 743 A.2d 1054 (R.I. 2003). The trial justices instructions were a mere collection of words that substituted for the clear and feasible limiting instructions that the law requires. The lay jurors in my case were permitted to embark upon their deliberations with this erroneous collection of words — in the guise of a convincing instruction — still ringing in their ears. My attorney recognized the instructional pettifog, and he appropriately objected (on record) to the content of the limiting instructions, hence his objection should be preserved. (STATE V. GARCIA 743 A.2d 1041 (R.I. 2003)).

I have previously addressed the 404(b) exclusionary Rule, and my perspective is clear regarding its admissibility in my case. Thus, the remainder of this response will focus on the specific arguments — pertaining to the inclusion of 404(b) testimony — in my case. These arguments are of an utmost importance as they clearly state the specific reason why 404(b) was considered and allowed in my particular case.

Obviously, I am familiar with my current case as well as the previous two allegations. Aside from my personal involvement in the legal aspects of my cases, I have also extensively reviewed the transcripts, the pretrial motions, the witnesses' statements, and the police reports. Rather than to rely on these documents, the prosecutor — in support of her motion — introduced numerous accusations that are hers alone. She did not present any evidence to corroborate her accusations, nor did she cite any sources of the same. Below are some of her most pernicious unsupported accusations; they not only have no merit, they also contain no truth. Her accusations included:

- That I was an employee of Harmony Hill School at the time of the alleged incident, and that I took boys (including 404(b) witness Mr. Abercrombie) from the school and brought them out-of-state, and to my home. (T p. 18, 22)
- That I offered Mr. Abercrombie money as a "silencing effect" in a "don't tell type of attitude." (T p. 19)
- That I had possession of Mr. Abercrombie's birth certificate and other personal information belonging to other boys from Harmony Hill. (T p. 22)
- That I told Mr. Colardo to "close his eyes." (T p. 23)
- That I told Mr. Colardo and Mr. Lappin "not to tell." (T p. 24, 25)

Not only did these events never occur, but they were also never alleged by either of the 404(b) witnesses or the accuser. These accusations — like her hypothetical scenarios during trial — were never confirmed or verified through evidence or testimony.

Judge Nugent fully accepted the prosecutor's exaggerated stories. He then, further exacerbated them with his own devastating imaginary account of events, including the following:

- That I pled to "an amended charge or to the charge of assault with intent to commit sexual assault" in 1995. (T p. 39) (That charge was dismissed, and I later pled nolo to a charge of simple assault (see attached).)
- That I "repeatedly molested Mr. Abercrombie and Mr. Edmonds" and that "these boys attended the Harmony Hills School where [I] was employed" at the time. (T p. 40) It should be noted that Mr. Edmonds was not a 404(b) witness at my trial, and he never attended Harmony Hill School. And more importantly neither ever testified that they were "repeated molested."
- That I told Mr. Colardo to "close his eyes" and then "pulled down his pants and underwear and took pictures of his pee-pee." (T p. 40) Mr. Colardo never said or stated any such thing, nor were there any mention or suggestion of naked (or exposed) pictures of Mr. Colardo.

Like the prosecutor's earlier claims, these fabricated accusations also never occurred, they were simply the product of Judge Nugent's highly prejudicial imagination.

These arguments are what initiated the inclusion of 404(b) testimony in my case. The judge based his decision on his imaginary tales, these tales were the product of the prosecutor's hypothetical scenarios, her fabricated scenarios were constructed from remote hearsay contained in vague police reports. Furthermore, during her direct-examination, the prosecutor had an ideal opportunity to address the above accusations and conclusively satisfy the conditions for the inclusion of 404(b) evidence; but she did not address any of them or any other major elements that she and the judge felt so strongly about during the pre-trial motion. She seemed to purposely avoid the above, and any mention of any sexually explicit language (e.g. sex, molestation, intent, etal.). Yet these are precisely the elements she needed to prove

The 404(b) witnesses were never re-interviewed and were never asked to provide any updated statements prior to the court allowing their testimony into trial. Hence, not only was their testimony allowed before determing its relevance to the present case, it was also allowed in before the court even knew what the witnesses would allege in their testimony (i.e. before they assessed the credibility of the witnesses or the merit of their allegations, to determine if any inappropriate act ever even occurred.

I went to trial with the reasonable belief that I would be fairly tried based on the "facts and circumstances," namly genuine events and real evidence. Had that been the case, I believe the evidence would have favored my innocence. I had not anticipated a trial of story telling and conjured up evidence. If professionals cannot avoid undue prejudice and conjecture, how can it be expected of a jury — a jury that is unfamiliar with the pernicious effects of "prior bad acts" evidence. It is clear that the prosecutor's and the judge's versions of the previous allegations greatly differed from the witnesses' actual testimony, how much further will the jurors exacerbate the allegations?

There has been much discussion regarding my alleged intent with regard to the 404(b) testimony, but what should be of greater importance is the intent of the legislators who inacted Rule 404(b) in the first place. It is my understanding — that as an exclusionary rule — it was meant for rare cases where identity might be an issue and "signiture evidence" might be necessary to build a case in such a way as to prove that it is unlikely that anyone else could have committed the crime, not that it is likely the same person committed both. Here is a simple analogy to demonstrate my point: If two banks are robbed, it is likely that any bank-robber could have committed both of the robberies. But, if the bank-robber wore a Nixon mask and clown shoes, it is unlikely that anyone else (including other robbers) could have commited the crimes.

As a layman, I do not believe that the scales of the criminal justice system should favor the party that is better able to (or better equipped to) manipulate the law through lies, conjecture, or by any other means — legal or otherwise. The scales of justice should weigh real evidence on its own merit, without undue influence. In my case it was not evidence that won a conviction, it was the prosecutor's and the judge's biased opinions in the guise of "facts and circumstances." These opinions irreversibly tainted my case from the onset, no amount of reason to the contrary could have adequately countered the effect. It is this same type of biased opinion that led millions of people to assume the world was flat; it was real evidence that eventually exposed the truth. Unfortunately, I liken my case to a modern-day witch hunt where all it takes to convict an innocent person is an extended finger and the power to influence public opinion. Please assure me that this is no longer the case